# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

CAROLEEN BAKER V. HUGH L. HOLLAND, AS COMMITTEE, ETC.

June 10, 1940.

Record No. 2241.

Present, All the Justices.

The opinion states the case.

*Thomas L. Woodward* and *John H. Fulcher,* for the plaintiff in error.

*Hugh L. Holland* and *William S. Holland,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error, who was the plaintiff below, served notice upon her committee, Hugh L. Holland, that she would upon a certain day move the court to terminate his authority as committee and to require an accounting of funds due her, because she had been discharged from the Central State Hospital, to which she had previously been committed as a feeble-minded person. She later filed an amended notice in which she charged that she had been unlawfully adjudged and committed as a feeble-minded person, in that the mandatory provisions of certain statutes had not been complied with, and therefore said adjudication and commitment were void. Likewise, she charged that the appointment of her committee was also void.

The court below heard the evidence *ore tenus* and concluded that the plaintiff was still feeble-minded and incompetent to take proper care of her estate. It therefore de-

clined to discharge the committee, and refused to turn the estate over to her.

The plaintiff, a negro girl, was about twenty-three years of age in 1939 when the present proceedings were begun. Her parents died when she was two years old. She made her home with her grandmother in Suffolk after the death of her parents until 1932 when the grandmother died. In 1933 she was committed to the Central State Hospital. At that time she was feeble-minded, incorrigible, and had syphilis. She remained there until 1936, when she was furloughed to Annie May Davis of Petersburg, and while there she partially completed a course in beauty culture. Later she returned to Suffolk and on May 5, 1938, was discharged from the Central State Hospital as not insane.

In 1921 the defendant was appointed guardian of Caroleen Baker and he remained as guardian until she became twenty-one years of age. Afterwards, in 1937, he was appointed her committee and duly qualified.

As guardian he at first received $2,000. This sum was augmented by two series of monthly payments until it now aggregates more than $13,500. All monthly payments are received from the United States Veterans' Administration. One series is derived from a government life insurance policy which was upon the life of the father of Caroleen Baker. These payments are $57.50 per month. The other series consists of payments of $20 per month, which are to be paid as long as Caroleen is feeble-minded. If she is mentally restored the $20 payments will cease.

At the time of her commitment to the Central State Hospital in 1933 as a feeble-minded person she had a mental age of eight years and nine months, and an intelligence quotient of 55. She was examined on May 16, 1939, while the present case was pending, by Dr. Williams, Director of the Bureau of Mental Hygiene under the State Board of Public Welfare, and Dr. Brent, Superintendent of the Central State Hospital, and found by them still to be feeble-minded. At this time they also found her suffering from syphilis in the secondary or the tertiary stage.

She was also examined from time to time by the physicians of the United States Government and they have found her feeble-minded. Their last report, under date of January 4, 1938, disclosed her condition to be "Mental deficiency, rather low grade moron. Tertiary syphilis." .

■ The record discloses abundant evidence to sustain the conclusion of the trial court that Caroleen Baker is still feeble-minded and not competent to take possession of her funds.

. Code, section 1051, provides in part as follows: "If a person residing in this State, not so found, be suspected of being insane, the circuit court of the county or corporation or circuit court of the city of which such person is an inhabitant, or such other courts in said city as have jurisdiction to appoint committees for insane persons, except that the chancery court shall have exclusive jurisdiction of such matters in the city of Richmond, shall, on the application of any party interested, proceed to examine into the state of mind of such person, and upon being satisfied that such person is insane, such court shall appoint one or two persons as committee for such person. * * * "

Code, section 1053, provides in part that: "The provisions of this chapter as to the appointment of committees of insane persons shall apply to the appointment of committees of epileptics, feeble-minded persons and idiots." And Code, section 1094, makes all of the provisions in the chapter as to the insane apply to the feeble-minded.

■ It will be observed from section 1051 that a committee may be appointed for an incompetent even though the incompetent be not incarcerated. The issue in the court below was not whether Caroleen Baker should be placed in a mental hospital. It was simply whether or not she was still feeble-minded. The finding that she was feeble-minded is amply supported; therefore her committee should continue as such.

■ It is said that the defendant was not a "party interested" within the meaning of section 1051, and for that reason did not have the right to make application for the

appointment of a committee for Caroleen Baker. It must be borne in mind that he had been her guardian for some eighteen or nineteen years and during that time a considerable amount of money had come into his hands for his ward. When the ward became twenty-one years of age his guardianship terminated and his accounts as such had to be finally settled and the funds disposed of to the ward. However, it had been determined that Caroleen was feeble-minded and, from the testimony of eminent physicians, incompetent to manage and control the funds due her. Under these circumstances it was his duty to inform the court of the incompetency of his ward.

In *United States Veterans' Bureau* v. *Thomas,* 156 Va. 902, 159 S. E. 159, we held that under Code, section 5417, which provides for the revocation of the powers of a fiduciary on evidence adduced by any "party interested," the quoted words included the United States Veterans' Bureau even though the bureau had no direct beneficial interest in the estate of the incompetent. The words "interested party" were not construed in a limited or technical sense. The bureau was the source of the fund and materially interested in paying it over to a proper committee, and for this reason we held it to be an "interested party" within the meaning of section 5417. For the same reason we hold that the defendant here had sufficient interest to see that the funds in his hands were delivered to some competent person for the benefit of the incompetent when his guardianship was terminated. When this situation was brought to the attention of the court it very properly appointed a committee, which happened to be the same person who had previously acted as the guardian of Caroleen Baker.

Counsel for the plaintiff makes many contentions pointing to the invalidity of the original commitment proceedings which were had in 1933, and it is suggested that those proceedings were invalid because the requirements of the various statutes involved were not complied with. Again, it is charged that even if Caroleen Baker were properly and legally adjudicated a feeble-minded person and committed

to the Central State Hospital yet the hospital authorities on May 31, 1938, discharged her from the hospital as "not insane," and the effect of the discharge removed her incompetency as a feeble-minded person and entitled her to have her estate restored to her.

The statutes relating to insane, epileptic, feeble-minded, and inebriate persons are found in Chapter 46 of the Code of 1936 (Michie), sections 1004 to 1095a, both inclusive. It is of little consequence, however, which statute or statutes were invoked in the original commitment proceedings in 1933 which resulted in the adjudication that Caroleen Baker was incompetent and under which she was committed to the hospital. We are not concerned with those proceedings. No committee was appointed for her at that time because there was no necessity for one. She then was a minor and had a qualified guardian who had the possession of her estate. The necessity for a committee did not arise until she became twenty-one years of age. This occurred in 1937 and it was then that the petition for the appointment was filed in the court below.

Upon that petition reasonable notice was given Caroleen Baker. James Baker and Mattie Moore, her nearest kin, were also given notice. A guardian *ad litem* was assigned her and he duly filed his answer. It was made to appear to the court that Caroleen Baker was feeble-minded and incapable of taking proper care of her person or properly managing her estate, and the court appointed a committee. The proceedings were in strict accord with section 1051 and are valid and binding.

There seems to be some confusion in the minds of counsel about the proceedings of 1933. They seem to think that if those proceedings were invalid and her commitment to the hospital illegal then she is entitled not only to her freedom but also to have her property turned over to her. The fact is, however, that the proceedings in 1937 for the appointment of a committee do not, to any extent, depend upon the proceedings of 1933. We may assume that the earlier proceedings were void; yet their invalidity would

not affect the new and entirely independent application for the appointment of a committee in 1937. The sole question before the court upon the application in 1937 was whether Caroleen Baker was then feeble-minded and incompetent to care for her property, and not whether she had been illegally committed to the hospital in 1933. It was judicially determined in 1937 that she was feeble-minded and the appointment followed. The sole question before the court, upon the present notice to discharge the committee, was whether she was still feeble-minded. The evidence was fullhanded that she was, and the court so found; therefore an affirmance of the judgment of the court below must follow.

Much reliance is placed upon the recent case of *Shands* v. *Shands, ante,* page 156, 7 S. E. (2d) 112. There the question was directed to the extent and effect of a judgment in *habeas corpus* proceedings had in the Corporation Court of the city of Staunton, when invoked in the Circuit Court of Prince George county upon a motion under section 5417 to discharge a committee. We held in an opinion by Mr. Justice Hudgins that the judgment in the *habeas corpus* proceeding declaring the incompetent person sane was not conclusive evidence that such person was competent to manage his property, but that the judgment was relevant evidence that such person had regained his mental faculties and that the judgment made a *prima facie* case. Our conclusion in that case was that it should be remanded and the lower court was directed to hear evidence on the competency of T. A. Shands to manage his property.

That case is authority, if any be needed in addition to the express provisions of section 1051, for the procedure here. After all, it is a question of fact as to whether an incompetent is capable of managing his property, and a finding by the trial court that a person is or is not so capable, if supported by the evidence, will be affirmed by this court.

In *Mallory* v. *Virginia Colony for the Feeble-Minded,* 123 Va. 205, 96 S. E. 172, the proceeding was for the purpose of testing the right of the Colony for the Feeble-Minded to

hold in custody the petitioner. It involved the failure of the "commission" to comply with certain mandatory statutes which provided for due process of law, such as giving the person suspected of feeble-mindedness information and notice of the charge and action to be taken against him. It was not a case involving the appointment of a committee for an incompetent. It simply dealt with the question of the actual custody of the incompetent—that is, whether he should remain incarcerated in the colony or be at liberty. That case has no bearing here.

■ The formal discharge of the plaintiff issued by the Central State Hospital is not conclusive evidence that she is capable of managing her estate.

Code, section 1046, provides as follows: "When any person not charged with or convicted of crime confined in a hospital or a jail as insane, shall be restored to sanity, the superintendent or the court, as the case may be, shall discharge him and give him a certificate thereof. The superintendent of any hospital or colony may discharge as improved or unimproved any patient therein if it appears to him that he will be sufficiently provided for by himself, his committee, relatives or friends and that his discharge will not be detrimental to the public, and that his detention therein is no longer necessary for his own welfare. The superintendent shall give said patient a certificate setting forth his mental condition and the cause of his discharge."

■ This section applies to feeble-minded persons as already indicated by section 1094, and contemplates the continuance of the committee under certain conditions after the discharge has been granted. The superintendent of the Central State Hospital explained in his testimony that when a patient has been away from a hospital on furlough continuously for twelve months they are "discharged" regardless of whether they have recovered or not, and that it was this kind of discharge that had been given Caroleen. He also testified that those afflicted with feeble-mindedness do not usually recover. The discharge from custody of the hospital could not operate to discharge the committee.

Section 1091 of the Code provides for the discharge of a feeble-minded person. If the superintendent of the colony is satisfied that the person is not feeble-minded, he must after such finding grant a discharge of such person "as not feeble-minded" and notify the clerk of the court from which such person was committed. In the present case Caroleen Baker did not have any such discharge. She has never been found "as not feeble-minded" by any superintendent; in fact, the superintendent of the hospital to which she was committed testified in this case that she was still feeble-minded.

The statement in the reply brief, to the effect that Caroleen Baker "having never been an inhabitant of the city of Suffolk," the Circuit Court of the city of Suffolk had no jurisdiction to appoint a committee for her, is not in accord with a fair reading of the testimony.

We are of opinion that the judgment should be affirmed.

*Affirmed.*