## CIRCUIT COURT OF FAIRFAX COUNTY

In re Guardianship
Petition for Norman Wright

Case No. (Fiduciary) 44530

By JUDGE THOMAS S. KENNY

October 13, 1989

This matter is before me on Fairfax County's petition to appoint a guardian for Mr. Wright pursuant to Sections 37.1-128.1 and 37.1-132 of the 1950 Code of Virginia, as amended. Those sections of the Code permit a guardian to be appointed for one who "has become incapable, either wholly or partially, of taking care of himself or his estate . . ." by reason of mental illness (§ 37.1-128.1) or impaired health (§ 37.1-132).

Mr. Axilbund was duly appointed guardian *ad litem* for Mr. Wright, and he has raised as a threshold issue a question of the constitutionality of the statutes. His challenge to the statutes is that the "incapable" standard is impermissibly vague and thereby denies Mr. Wright substantive due process under the Fifth and Fourteenth Amendments to the federal Constitution. Mr. Axilbund does not challenge the procedural aspects of the proceeding on due process grounds.

I have carefully reviewed the authorities cited by Mr. Axilbund and Ms. Skopic on this issue and find in favor of the constitutionality of the statutes. Initially, I note that there has long been a presumption in Virginia that legislative enactments are constitutional. In *Ex parte Settle*, 114 Va. 715, 719 (1913), the Court said:

> The principles by which this court is governed in considering the constitutionality of a law have been too frequently the subject of judicial decision to require the citation of authority. Every presumption is made in favor of the constitutionality of an act of the legislature. A reasonable doubt as to its constitutionality must be solved in favor of the validity of the law, and the courts have nothing to do with the question whether or not the legislation is wise and proper, as the legislature has plenary power, except where the Constitution of the State, or of the United States, forbids, and it is only in cases where the statute in question is plainly repugnant to some provision of the Constitution that the courts can declare it to be null and void.

*Accord*, *Charlottesville v. DeHaan*, 228 Va. 578 (1984); *Blue Cross v. Commonwealth*, 221 Va. 349 (1980).

I do not believe that the standard enunciated in these statutes ("incapable . . . of taking care of himself or his estate") is so vague as to be "plainly repugnant" to the Constitution. The language is clear and unambiguous, and where that is the case, the words used will be given their plain and ordinary meaning. *See, e.g., Harbor Cruises, Inc. v. Commonwealth*, 217 Va. 458 (1976).

The Virginia Supreme Court has said on a number of occasions that the capacity of an individual to manage his or her property is a question of fact. *Schmidt v. Goddin*, 224 Va. 474 (1982); *Baker v. Holland*, 175 Va. 520 (1940). I hold that by using the ordinary meaning of the word "incapable," a trial court can adequately measure the evidence presented to it and rule on the issue of whether a particular respondent is or is not capable, wholly or partially, of managing his affairs. The statutes pass constitutional muster.

In applying this test in this case, the following is a summary of relevant evidence heard by me at the hearing on September 28, 1989:

1. Ms. Beth Hernandez, a social worker for Fairfax County's Department of Social Services, Adult Protective Services Division, testified as a fact witness and as

an expert witness in the field of social work with an emphasis on geriatric clients. She testified that her department was alerted to a potential problem with Mr. and Mrs. Wright by their neighbors; that she found the home in disrepair, with animal feces and broken glass on the floor; that Mr. Wright often seemed confused and expressed concerns that neighbors were breaking in and taking things; that Mr. Wright did not seem to be aware of his dietary restrictions occasioned by his diabetes; that Mr. Wright's telephone was disconnected on several occasions due to nonpayment of the bill; and that she was aware that others of his creditors were not paid in a timely fashion. Ms. Hernandez further testified that she attempted without success to persuade Mr. Wright to accept various services (such as a homemaker and a low-interest home rehabilitation loan) offered by the County. In her professional opinion, Mr. Wright was (as of her last involvement with him in June, 1988) unable to live independently, unable to handle his financial affairs, and at risk for his health needs.

2. Dr. Lawrence Sutker, a psychiatrist at Western State Hospital, was stipulated to be an expert in geriatric psychiatry. He dealt with Mr. Wright on a regular basis at Western State. He diagnosed Mr. Wright's condition as "primary degenerative dementia," with a long-term prognosis he described as "grave." He noted, however, that there had been no obvious worsening of his condition since the diagnosis was made in June of 1989. In Dr. Sutker's professional opinion, Mr. Wright is not now capable of handling his health care independently, nor managing his financial affairs, nor of living independently. Dr. Sutker also testified that the least restrictive housing alternative available for Mr. Wright would be a nursing home; in his opinion, a supervised adult home would be inappropriate because of Mr. Wright's incontinence. He did, however, believe that Mr. Wright should be consulted in regards to his place of residence and major medical decisions, but without a "veto power" in either case.

3. Dr. Lichtenberg, a clinical psychologist at Western State, corroborated the diagnosis of primary degenerative dementia. He described the results of a battery of neuropsychological tests administered to Mr. Wright and expressed the opinion that he could not live independently or manage

his own financial affairs. He further stated that Mr. Wright was capable of exercising rational judgment in simple, but not complex, situations.

4. Finally, Mr. Wright himself testified. I was impressed by his alertness, articulateness, and general grasp of what was happening at the hearing. He described his diabetes needs as a requirement for insulin every day and understood that if he does not take it, he will go into a coma. He believes he can live independently in his own home and thinks he is capable of cooking, cleaning, and performing necessary home repairs. He testified that he always pays all his bills by the 10th of the month. However, it is also apparent from Mr. Wright's testimony that he is at least terribly confused and probably delusional about many aspects of his life; for example, he testified that he bought his house in Falls Church two years ago, when in fact he bought it in 1966; when he broke his hips in a fall in his yard in February, 1989, it was because a tornado from West Virginia picked him up and dropped him on a pile of rocks; the same tornado carried his wife to another county; he checked himself out of the nursing home where he was recuperating from his broken hips because he became convinced that the nursing home was murdering its patients in order to get their insurance; and his son, who has been helping him with his financial affairs, was not cashing Mr. Wright's Social Security checks because the government did not have enough money to cover them.

Based on the foregoing evidence, I am of the opinion that the evidence, taken as a whole, supports the conclusion that Mr. Wright is not capable of taking care of certain aspects of his life or his estate by reason of his mental illness, namely, primary degenerative dementia, under Section 37.1-128.1. I do not believe that a guardian is required due to his *physical* condition and, accordingly, dismiss the petition insofar as it is grounded on Section 37.1-132, but this has no practical effect on the outcome of this case.

The guardian's duties in this case will be to:

A. Manage Mr. Wright's financial affairs, including the receipt of all income, payment of all bills, management (including sale, if necessary, for Mr. Wright's medical or living expenses or if otherwise appropriate) of Mr.

Wright's assets, and the provision of a reasonable amount of spending money to Mr. Wright.

B. Determine the place where Mr. Wright will reside.

C. Apply for and monitor all applicable government benefits for which Mr. Wright is or may become eligible.

In carrying out the foregoing duties, the guardian shall, to the extent feasible, consult in advance with Mr. Wright concerning all major decisions to be made; although it is not my intention that Mr. Wright's views should necessarily be controlling. I believe that to the extent feasible, they should be considered by the guardian.

The appointment of a guardian for the foregoing purposes is limited to the purposes stated and should not be construed to interfere with the rest of Mr. Wright's rights, such as his rights to: vote; make or revoke a will; sue or be sued in his own name, except insofar as such suits relate to matters under the control of the guardian; consent to or refuse medical treatment; travel; and, if appropriate, determine who shall provide personal care and assistance to him.

I have been advised by Ms. Skopic that there has been some difficulty in identifying an appropriate candidate for guardian, a difficulty which she believes will be eased by a statement of the guardian's responsibilities. Hopefully, a guardian can soon be identified and an appropriate order will be prepared and endorsed for entry.

### December 21, 1989

I have been advised by the County Attorney's Office that despite diligent efforts and contact with numerous potential guardians, the County Attorney has been unable to identify a guardian for Mr. Wright under the terms and conditions which I set forth in my opinion letter of October 13th.

The court has also, on its own, contacted a potential guardian and has been advised that the terms and conditions would be unacceptable. Specifically, the concern seems to be that the reservation of rights to Mr. Wright are inconsistent with the appointment of a guardian. Although the potential guardians generally applaud the court's desire to allow Mr. Wright to be consulted in major decisions, the concern that has been expressed to me is that

too much uncertainty exists as to the boundary line of the guardian's authority.

Accordingly, I am constrained, with considerable reluctance, to revise the terms of the guardianship that I have ordered for Mr. Wright. I am hereby rescinding, in full, the last three paragraphs of my letter of October 13th. I am replacing them with the following single paragraph:

> The guardian shall consider, but shall not be bound by, the personal values and express wishes of Mr. Wright in evaluating his circumstances and making health care and residential decisions concerning his person.

I am hereby requesting Ms. Skopic to incorporate the foregoing language in an appropriate guardianship order and to renew her efforts to obtain a discreet and competent attorney to serve as Mr. Wright's guardian in this matter.